IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DEEPALI TUKAYE**                                                                                      **PLAINTIFF**

v                               **CASE NO: 4:23-CV-0420-LPR**

**MATT TROUP,
INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS CEO
OF CONWAY REGIONAL MEDICAL CENTER,
THE CITY OF CONWAY, HEALTH FACILITIES
BOARD (OF CONWAY REGIONAL MEDICAL CENTER),
AND JOHN DOE 1**                                        **DEFENDANTS**

**BRIEF IN SUPPORT OF SEPARATE DEFENDANT HEALTH FACILITIES BOARD'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Separate Defendant, The City of Conway, Arkansas Health Facilities Board (Conway Regional Medical Center)[1], (hereinafter "Health Facilities Board") by and through its attorney, Sarah Cowan, and for its Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint, states:

Plaintiff has filed a Complaint [ECF Doc. 1] and an Amended Complaint [ECF Doc. 13] against Separate Defendant Health Facilities Board, alleging tortious interference with a contract/business expectancy and discrimination pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Plaintiff's Amended Complaint lacks sufficient facts to establish any claim upon which relief can be granted. It contains nothing more than conclusory assertions to support Plaintiff's

---

[1] In both the captions and the text of the Complaint and the Amended Complaint, Plaintiff misidentifies Separate Defendant Health Facilities Board as either "The City of Conway, Health Facilities Board (of Conway Regional Medical Center)" or "Health Facilities Board (of Conway Regional Medical Center), depending upon how the caption's punctuation is interpreted, given the combination of commas and semi-colons Plaintiff uses to separate and delineate the parties. [ECF Doc. 1]. As set forth in Ordinance No. 0-99-57, Separate Defendant's official name is "The City of Conway, Arkansas Health Facilities Board (Conway Regional Medical Center)." *See* Ex. A to Plaintiff's Complaint, Ordinance No. 0-99-57. [ECF Doc. 1].

claims and fails to meet the pleading standards established by the Supreme Court of the United States in *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 1944 (2009). Even if accepted as true, the conclusory allegations in Plaintiff's Amended Complaint fail to state facts that demonstrate any connection between the Health Facilities Board and any improper action taken against Plaintiff that or caused her to incur any injuries or damages. Accordingly, Plaintiff's Amended Complaint should be dismissed in its entirety.

## INTRODUCTION

Plaintiff has filed claims of tortious interference with a contract/business expectancy; discrimination pursuant to 42 U.S.C. § 1981; discrimination pursuant to 42 U.S.C. § 1983; and discrimination pursuant to Ark. Code Ann. § 16-123-105 of the Arkansas Civil Rights Act (ACRA). Plaintiff filed her original Complaint on May 4, 2023 [ECF Doc. 1] and subsequently filed an Amended Complaint on June 9, 2023 [ECF Doc. 13]. In her Amended Complaint, Plaintiff fails to state facts to show that the Health Facilities Board interfered in a contract or business expectancy between her and her employer, the Jack Stephens Heart Institute and/or Separate Defendant Conway Regional Medical Center. Plaintiff provides no factual support for her claim that she was treated differently in the course of her employment than similarly situated employees of different ethnicities and/or genders because Plaintiff is Indian and/or because she is a woman. Even if such accusations were taken as true, Plaintiff fails to demonstrate any connection between the Health Facilities Board and any alleged disparate treatment. As such, Plaintiff's Amended Complaint fails to meet the pleading standards necessary to support her alleged causes of action as set forth in Fed. R Civ. P 12(b)(6), *Bell Atlantic v. Twombly*, and *Ashcroft v. Iqbal*.

## LEGAL STANDARD

Plaintiff's claims against the Health Facilities Board should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted . . . is to test the legal sufficiency of the complaint." *Brown v. Mayflower*, 2016 WL 4708493, *1 (E.D. Ark. 2016). When considering a 12(b)(6) motion, all factual allegations of a complaint are assumed to be true and construed in favor of the plaintiff. *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). While courts assume the factual allegations of a complaint are true for purposes of ruling on the motion, "[a]t a minimum . . . a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Id*., (quoting *Springdale Education Association v. Springdale School District*, 133 F.3d 649, 651 (8th Cir. 1998)). In short, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

I. **Plaintiff's Amended Complaint is comprised of conclusory allegations and lacks sufficiently plausible connections between the facts alleged and the relief requested; therefore it does not meet the pleading standards of *Iqbal* and *Twombly*.**

To survive a motion to dismiss, a Plaintiff must state a claim where relief is plausible on its face. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, citing Fed. R. civ. P. 8(a)(2).

Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 578. For a plaintiff to avoid dismissal at this stage in a lawsuit, the plaintiff must plead well-pleaded factual allegations which plausibility establish an entitlement to relief. *Iqbal*, 556 U.S. at 678–79. Moreover, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. The plaintiff cannot provide a mere recitation of the elements of a cause of action and expect to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (citation omitted).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After the court has excluded all conclusory allegations contained in the complaint, it conducts the second inquiry, which is to assess the plausibility of the connection between the facts alleged and the relief claimed. If a gap exists between the alleged facts and claims that the plaintiff has made, the plausibility analysis fills the gap, informed by the judge's judicial experience and common sense. *Id*. at 679–80.

Here, Plaintiff has failed to raise any specific allegations that would support a cognizable claim of discrimination under 42 U.S.C. § 1981, 42 U.S.C. § 1983, or the ACRA. While Plaintiff's Amended Complaint contains more attempts at factual allegations than the original Complaint, the Amended Complaint offers no substantive changes that demonstrate sufficient plausibility that Plaintiff is entitled to any relief based on the claims she has made. Furthermore, Plaintiff simply

makes more conclusory statements but still has not pleaded any factual allegations that would allow this Court to draw the reasonable inference that the Health Facilities Board is liable for any of the misconduct alleged.

**II.    The Health Facilities Board has no administrative control or oversight of the operations of Conway Regional Medical Center.**

While Plaintiff has failed to attach any exhibits to her Amended Complaint, the Health Facilities Board will respond to the Amended Complaint as if the exhibits to Plaintiff's original Complaint were attached to the Amended Complaint identically – that is to say that Exhibit A to the Amended Complaint is Ordinance No. 0-99-57, and Exhibit B to the Amended Complaint is the "Physician Employment Agreement for Cardiology Services," the employment contract between Plaintiff and her employer, the Jack Stephens Heart Institute. [ECF Doc. 1, pp. 10 – 54].

As shown in Plaintiff's Exhibit A, the Health Facilities Board was created in response to the enactment of the "Public Facilities Boards Act" ("the Act"), Ark. Code Ann. 14-137-101, *et. seq.* Ordinance No. 0-99-57 provides that the Board is responsible for "the financing and refinancing of capital improvements to a general, acute care hospital in the City ("the Project"). [ECF Doc. 1, p. 6, ¶ 2]. The Ordinance further states:

> (e) It is in the best interest of the City and its inhabitants that there be created a public facilities board under the Act and that the authority of the board be limited to accomplishing, financing, contracting concerning, and otherwise dealing with health care facilities (as defined in the Act) to be owned or operated by Conway Regional Medical Center, including the refinancing of all or part of existing debt.

 [ECF Doc. 1 at 7].

Ordinance No. 0-99-57 explicitly defines the specific powers of the Health Facilities Board:

> **Section 3. Powers.** The Board is empowered, from time to time, to own, acquire, construct, reconstruct, extend, equip, improve, sell, lease, contract concerning or otherwise deal in or dispose of health care facilities, including mortgage loans with

>respect thereto (including specifically the Project and any Subsequent Project, as hereinbefore defined); provided, however, that the authority of the Board shall be limited to such health care facilities as are sold, leased or mortgaged to Conway Regional Medical Center or are otherwise owned by, dealt in, disposed of, or concerning which a loan is made to Conway Regional Medical Center, pursuant to a contract or contracts between the Board and Conway Regional Medical Center. The Board shall have all of the powers provided for in the Act, subject to the limitations of this Ordinance, and shall carry out its duties in accordance with the Act.

*Id.*

Ordinance No. 0-99-57 flows directly from the language of the Act, specifically Ark. Code Ann. § 102, entitled "Resolution and Intent:"

>(d) The General Assembly finds that the public policy and responsibility of the state as set forth in this section cannot be fully attained without the use of public financing, and it is the purpose of this chapter to make such financing available for energy facilities which will reduce energy consumption and make use of renewable energy resources in residential, agricultural, commercial, or industrial applications.
>
>(e) It is found that the providing of health care through establishment of health care facilities in many cities and counties in Arkansas has been facilitated by the availability of assistance by public facilities boards created by counties and cities; that it is in the best interest of the citizens of the State of Arkansas that assistance be provided, in the discretion of local public facilities boards, for all forms of health care for the citizens in such counties and cities; and that confusion exists regarding whether certain facilities are properly qualified under the terms of this chapter, and amendment thereof is necessary for the clarification of the facilities comprehended within the term "health care facilities" within the meaning of this chapter.

Ark. Code Ann. § 14-137-102(c)-(d).

Plaintiff's own Exhibit A, Ordinance No. 0-99-57, demonstrates that there is absolutely no factual basis for a claim that Mr. Troup acted on behalf of the Health Facilities Board because the Health Facilities Board does not have any administrative or operational authority over Conway Regional Medical Center.

    **III.    Plaintiff fails to establish that Mr. Troup is a state actor, that Mr. Troup acted under color of law, or that Mr. Troup has any connection whatsoever to the Health Facilities Board.**

"To establish a claim under 42 U.S.C. § 1983, [the plaintiff] must show a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). A prima facie case under § 1983 requires a plaintiff to show that defendants: (1) acted under color of law; and (2) caused constitutional violations that damaged plaintiff. *Reeve v. Oliver*, 41 F.3d 381, 383 (8th Cir. 1994). The ACRA prohibits individuals acting under color of state law from depriving persons of their rights, privileges, or immunities secured by the Arkansas Constitution. Ark. Code Ann. §16-123-105; *see also, West v. Adkins,* 487 U.S. 42 (1988). In prohibiting discrimination, 42 U.S.C. § 1981(c), provides that "[t]he rights protected . . . are protected against impairment by nongovernmental discrimination and impairment under color of State law."

Mr. Troup did not engage in state action because he is not an employee, member, or delegate of the Health Facilities Board. Plaintiff endeavors to connect Mr. Troup to the Health Facilities Board, an entity of the City of Conway, Arkansas, to create the appearance of action taken under color of law. Plaintiff attempts to create this necessary element of her constitutional claims by making the factually unsupported, conclusory statement that Mr. Troup was "acting as a special employee for the Conway Regional Medical Center and the City of Conway." [ECF Doc. 13, ¶ 9]. The term "special employee" is neither defined in Ordinance No. 0-99-57 nor in Ark. Code Ann. § 14-137-101, *et seq.*

Plaintiff appears to manipulate or at least misconstrue the phrase "dual employee," a term of art used in the context of worker's compensation cases. In the realm of worker's compensation, dual employee refers to an employee that maintains employment with his or her general employer, but works on loan to a special employer. *See generally*, *McMaster v. Amoco Foam products Co.*,

735 F. Supp. 941 (D.S.D. 1990); *Quiles v. Johnson*, 906 F.3d 735 (8th Cir. 2018); and *Phillips v. U.S.*, 422 F.3d 709 (8th Cir. 2005).

Even if the phrase "dual employee" was somehow relevant to the issues of this case, merely accusing Mr. Troup of acting as a special or dual employee does not make it so. Plaintiff has not even put forth facts that demonstrate that the Health Facilities Board had any working knowledge of the hospital's day-to-day operations and/or Mr. Troup's actions as CEO. Plaintiff's contention that any of the alleged bad acts in the Amended Complaint were undertaken under color of law by virtue of a non-existent relationship between the CEO of Conway Regional Medical Center and the city board tasked with funding its facilities is ludicrous and fails to state any claim for which relief can be granted.

Neither the ordinance nor the Act give any the Health Facilities Board any power to act with respect to the actual operations of the hospital. The Health Facilities Board exists and acts strictly to finance the facilities and services of Conway Regional Memorial Hospital. Neither Ordinance No. 0-99-57 nor the Act itself concern administration or operations. Plaintiff offers no proof of any association between Matt Troup and the Health Facilities Board, that he was ever hired as a "special employee" to act on behalf of the Health Facilities Board, what such action might or would entail, or that he was even a member of the Health Facilities Board. Plaintiff's nonsensical, conclusory allegation that the existence of a Health Facilities Board.

Even a liberal reading of Plaintiff's Amended Complaint fails to state facts that support any claims that the Health Facilities Board is responsible for any alleged violations of Plaintiff's rights. Plaintiff has not met the pleading standard to show that Mr. Troup was a state actor or at the very least acted in concert with the Health Facilities Board. Further, Plaintiff has not made a single factual allegation that the Health Facilities Board were even aware of the alleged violations.

Thus, to the extent that the Amended Complaint asserts any claim against the Health Facilities Board where Mr. Troup is purported to have acted on behalf of the Health Facilities Board, those claims should be dismissed.

While Plaintiff has attempted to engage the Health Facilities Board in this lawsuit in order to establish that any of the actions described in her Amended Complaint were taken under color of law, Plaintiff has failed to meet the pleading standards set forth in Fed. R Civ. P 12(b)(6), *Bell Atlantic v. Twombly*, and *Ashcroft v. Iqbal*. Plaintiff has failed to plead any factual allegations that demonstrate that the Health Facilities Board could be held liable for any of the alleged misconduct at issue.

WHEREFORE, the Health Facilities Board prays that the Court grant Separate Defendant's Motion to Dismiss Plaintiff's Amended Complaint and for all other just and proper relief to which Separate Defendant may be entitled.

Respectfully submitted,

**CITY OF CONWAY, ARKANSAS HEALTH FACILITIES BOARD (CONWAY REGIONAL MEDICAL CENTER) SEPARATE DEFENDANT**

By: Sarah Cowan, Ark. Bar No. 2013182
Attorney at Law
P.O. Box 38
North Little Rock, AR 72115
Tel: (501) 978-6117
Fax: (501) 712-1598
scowan@arml.org